**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:18-cv-640-RJC-DSC**

| | |
|---|---|
| **CENTRAL NATIONAL GOTTESMAN INC., a NEW YORK CORPORATION,** )<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **NAKOS PAPER PRODUCTS INC., a NORTH CAROLINA CORPORATION, CHRISTOS L. NAKOS INDIVIDUALLY AND LAMBROS C. NAKOS INDIVIDUALLY,** )<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss, Doc. 20, and the parties' briefs and exhibits, Docs. 21-23. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted in part and denied in part</u> as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the allegations of the Complaint as true, Plaintiff Central National Gottesman, Inc. and Defendant Nakos Paper Products, Inc. have engaged in business since February 2014. Their business relationship involves the sale and delivery of goods pursuant to various agreements between the parties, including a Bailment Agreement dated November 7, 2016. Pursuant to these

1

Agreements, CNG delivered paper inventory to Nakos. Nakos processed CNG's inventory into finished products that would be sold and delivered to Nakos' end-use customers. Individual Defendants Christos "Chris" Nakos and Lambros Nakos are the shareholders and officers of Nakos.

According to invoice terms, Nakos failed to pay CNG for inventory it received beginning in late 2014. As a result of Nakos' debt to CNG at the end of 2016, the parties agreed that: (1) CNG would deliver its inventory to Nakos pursuant to the Bailment agreement; (2) CNG was the owner of its inventory delivered to Nakos at all times; (3) Nakos was to process CNG's inventory into finished product; (4) CNG was to invoice the end-use customers for the finished product delivered by Nakos; (5) CNG was to receive payment from the customer, and the payment would first be applied to CNG's cost of inventory; and (6) the remaining proceeds were to be paid 70% to Nakos and 30% to CNG.

Nakos breached the Agreements beginning in early 2017 by converting CNG's inventory into finished product and directly invoicing the end-use customers without CNG's knowledge or consent. This breach continued through early 2018 when CNG conducted a review and inspection of its inventory on Nakos' premises and discovered that approximately $400,000 of its inventory was missing.

On November 28, 2018, Plaintiff filed this lawsuit against Defendants. Defendants filed a Motion to Dismiss and after additional factual allegations came to light, Plaintiff sought leave of Court to amend its Complaint which was granted. On March 11, 2019, Plaintiff filed an Amended Complaint. Plaintiff brings multiple claims against Nakos and Chris and Lambros Nakos individually.

On May 31, 2019, Defendants' filed this Motion to Dismiss pursuant to Rule 12(b)(6). The Motion moves to dismiss the following claims: (1) tortious interference with contract against Chris Nakos; (2) conversion and aiding and abetting conversion against the Individual Defendants; (3) fraud as to all Defendants; (4) constructive trust as to all Defendants; (5) fraudulent transfers as to all Defendants; (6) civil conspiracy to commit conversion and fraud as to all Defendants; (7) piercing the corporate veil; and (8) unfair and deceptive trade practices against the Individual Defendants.

## II. <u>STANDARD OF REVIEW</u>

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

In <u>Iqbal</u>, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

(citing <u>Twombly</u>, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); <u>see also</u> <u>Wag More Dogs, LLC v. Cozart</u>, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u> at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. <u>Id.</u> at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." <u>Sons of Confederate Veterans v. City of Lexington</u>, 722 F.3d 224, 228 (4th Cir. 2013) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." <u>Neitzke v. Williams</u>, 490 U.S. at 328; <u>see also</u> <u>Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.</u>, 521 F. App'x 278, 293

(4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." <u>Anand v. Ocwen Loan Servicing, LLC</u>, 754 F.3d 195, 198 (4th Cir. 2014).

## III. <u>DISCUSSION</u>

### A. <u>Tortious Interference with Contract Claim</u>

Defendants argue that CNG has failed to state a tortious interference with contract claim against Chris Nakos. The elements of a tortious interference with a contract claim are:

> (1) a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to the plaintiffs.

<u>Pinewood Homes, Inc. v. Harris</u>, 646 S.E.2d 826, 832 (N.C. App. 2007). CNG seeks to impose personal liability on Chris Nakos for having tortuously interfered with the Agreements between CNG and Nakos. Defendants respond that Chris Nakos is entitled to a presumption that his actions were in the interests of the corporation and that CNG has failed to plead adequate facts in support of this claim.

The acts of a corporate officer are generally presumed to have been done in the interests of the corporation, but that presumption may be "overcome when the means or the officer's motives are improper." <u>Embree Constr. Grp., Inc. v. Rafcor, Inc.</u>, 411 S.E.2d 916, 924 (N.C. 1992). As the North Carolina Supreme Court recognized in <u>Embree</u>, the issue of qualified privilege of an officer is inherently one of fact such that dismissal at the Rule 12(b)(6) stage is improper where *adequate facts* challenging an insider's justification are pleaded. <u>Id.</u> (emphasis added).

The Court finds that the Amended Complaint fails to allege adequate facts that Chris Nakos acted outside his capacity as an officer or shareholder of Nakos. The allegation that "Chris Nakos acted without justification" is insufficient to salvage the claim. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Embree decision relied upon by CNG does not change this result. In Embree, there were specific allegations that the officers and directors of the corporation took actions not on behalf of the corporation but rather to minimize their personal liability under loan guarantees. 411 S.E.2d at 924. There are no corresponding allegations against Chris Nakos in the Amended Complaint. For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's tortious interference with contract claim against Chris Nakos be granted.

### B. Conversion and Aiding and Abetting Conversion Claims

Conversion is (1) an unauthorized assumption and exercise of the right of ownership over goods or personal property belonging to another, and (2) a wrongful possession or conversion, regardless of the subsequent application of the converted property. Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012). In the Amended Complaint, CNG asserts a claim for conversion and aiding and abetting conversion against the Individual Defendants. The only allegations in the Amended Complaint are that the Individual Defendants, as officers and shareholders of Nakos and for their own pecuniary gain, "directed and caused Nakos' conversion of CNG's inventory." Doc. 15 at ¶¶ 83-84. The Court finds that CNG has failed to allege the elements of conversion as to the Individual Defendants. The only party alleged to have converted CNG's inventory is Nakos. Therefore, the claim for conversion against the Individual Defendants should be dismissed.

No North Carolina court has recognized a cause of action for aiding and abetting conversion. See In re NC and VA Warranty Co., 594 B.R. 316, 355-56 (Bankr. M.D.N.C. 2018) ("[w]hether North Carolina recognizes a cause of action for aiding and abetting a common law tort remains an open question, with conflicting opinions in both the North Carolina state and federal

courts."). Since the claim of aiding and abetting conversion has never been recognized in North Carolina, this claim should be dismissed. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir. 1998) ("As a federal court exercising concurrent jurisdiction over this important question of state law we are most unwilling to extend North Carolina tort law farther than any North Carolina court has been willing to go.").

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's conversion and aiding and abetting conversion claims be granted.

**C. Fraud Claims**

"Under North Carolina law, elements of fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Food Lion, LLC v. Schuster Marketing Corp., 382 F.Supp.2d 793 (E.D.N.C. 2005). Defendants argue that CNG has failed to plead its fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). In McCauley v. Home Loan Inv. Bank, 710 F.3d 551, 559-60 (4th Cir. 2013), the Fourth Circuit found that that "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Id. (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)).

The Amended Complaint cites to email communications between Chris Nakos and CNG. However, there is no allegation that these emails contain false or misleading information, nor is there any allegation regarding what action if any CNG took in reliance on those statements. The

7

emails were sent in February and May 2018, four years after Nakos and CNG began their business relationship in February 2014 and more than a year after the Bailment Agreement was executed in November 2016. CNG cannot contend that it was fraudulently induced to enter into a business relationship with Nakos based upon statements that did not exist at the time the relationship began. Because CNG has failed to identify any fraudulent statement made by Chris Nakos, the fraud claim should be dismissed.

CNG also fails to identify any statement made by Lambros Nakos. He did not sign the Bailment Agreement on behalf of Nakos nor is there any allegation that he was involved in the negotiations for the Agreement. The only statements identified by CNG were made by Chris Nakos, as discussed above. Because the Amended Complaint fails to allege any action taken by Lambros Nakos, the fraud claim against him should be dismissed.

With regard to the fraud claim against Nakos, the Court finds that CNG fails to identify any specific fraudulent statement made by Nakos as required by Rule 9(b). Additionally, CNG fails to allege any specific false representations made prior to and during the formation of the contracts at issue. As discussed above, the only statements identified by CNG are emails between Chris Nakos and CNG in 2018, four years after the parties began their business relationship and almost two years after execution of the Bailment Agreement. Where a cause of action presumes the "existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement," the issues raised must be relegated to the arena of contract law and are not appropriate for resolution under tort principles. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). "[I]t is plain that the mere failure to carry out a promise in contract does not support a tort action for fraud." Id. at 346.

"North Carolina's economic loss rule provides that '[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" <u>Legacy Data Access, Inc. v. Cadrillion, LLC</u>, 889 F.3d 158, 164 (4th Cir. 2018) (citing <u>N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.</u>, 240 S.E.2d 345, 350 (N.C. 1978).). In <u>Legacy Data Access</u>, the Fourth Circuit Court of Appeals stated:

> We have previously rejected "attempt[s] by the plaintiff to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim" as "inconsistent both with North Carolina law and sound commercial practice." [In a prior case,] [w]e held that because the "crux of this matter is and always has been a contract dispute," the district court erred in permitting plaintiffs to assert an "extensive" array of tort claims — such as breach of fiduciary duty, fraud, and intentional interference with contractual relations—for the same alleged harm.

889 F.3d at 164-165 (citing <u>Broussard v. Meineke Disc. Muffler Shops</u>, 155 F.3d 331, 346 (4th Cir. 1998)). Furthermore, it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." <u>Strum v. Exxon Co., U.S.A.</u>, 15 F.3d 327, 333 (4th Cir. 1994).

The Court finds that the facts alleged in the Amended Complaint, taken as true and viewed in the light most favorable to Plaintiff, do not state a plausible claim for fraud against Nakos and the claim should be dismissed.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's fraud claim against all Defendants be <u>granted</u>.

### D. **Constructive Trust Claim**

CNG seeks the imposition of a constructive trust as to the funds owed to it and arising from the conversion of its inventory. "When a court impresses a constructive trust upon property for the benefit of a claimant, it exercises its equitable powers to fashion remedies." <u>Weatherford v.</u>

Keenan, 493 S.E.2d 812, 813 (N.C. App. 1997). "A constructive trust is a duty or relationship imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against a claim by the beneficiary of the constructive trust. Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 751 (N.C. 2012). "[A] constructive trust is not a standalone claim for relief or cause of action." LLG-NRMH, LLC v. Northern Riverfront Marina & Hotel, LLLP, No. 18 CVS 4522, 2018 WL 4902000, at *5 (N.C. Super. Ct. Oct. 9, 2018) (citing Weatherford, 493 S.E.2d at 813).

The Court agrees that a constructive trust is not a standalone claim for relief or cause of action. Accordingly, for purposes of clarity, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted to the extent it seeks dismissal of the cause of action for a constructive trust. The undersigned respectfully recommends that this dismissal be without prejudice to Plaintiffs' ability to pursue the equitable remedy of a constructive trust to the extent one or more remaining claims for relief justify such a remedy.

### E. Fraudulent Transfer Claims

In its claim for recovery of fraudulent transfers, CNG asserts claims for both actual fraud[1] (Doc. 15 at ¶ 114) and constructive fraud[2] (Doc. 15 at ¶ 113). Under North Carolina's Uniform Fraudulent Transfer Act ("UFTA"), N.C. Gen.Stat. § 39–23.1 et seq., a creditor is allowed to bring a civil action against a debtor for certain transfers made by the debtor. N.C. Gen.Stat. § 39–23.7.

---

[1] A claim for fraudulent transfer seeks the recovery of a transfer made "with the intent to hinder, delay, or defraud a creditor of the debtor." N.C. Gen. Stat. § 39-23.4(a)(1).

[2] A claim for a constructive fraudulent transfer does not focus on the intent of the transferor and instead allows recovery of a transfer made for less than reasonably equivalent value at a time the transferor was either insolvent or left with insufficient assets to operate its business as a result of the transfer. N.C. Gen. Stat. § 39-23.4(a)(2) and 39-23.5(a)

10

### 1. Actual Fraudulent Transfer Claim

Under the UFTA, a debtor commits an actual fraudulent transfer when he makes the transfer with "the intent to hinder, delay, or defraud a creditor of the debtor." N.C. Gen.Stat. § 39–23.4(a)(1). Courts have consistently held that a claim to recover an actual fraudulent transfer must satisfy the heightened pleading requirements of Rule 9(b). See Hongda Chem USA, LLC v. Shangyu Sunfit Chem. Co., No. 1:12cv1146, 2016 WL 4703725, at *5-16 (M.D.N.C. September 8, 2016). To set forth a claim for actual fraudulent transfer, CNG must state with specificity the factual circumstances constituting the alleged fraud. Id. at *5. The "complaint must allege (1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfers and (3) the consideration paid with respect thereto." Id. (quoting In re Whitley, Adversary No. 12-02028, 2013 WL 486782, at *13 (Bankr. M.D.N.C. Feb. 7, 2013)(analyzing a claim for actual fraudulent transfer under the Bankruptcy Code after noting that "North Carolina's fraudulent transfer statute is similar in form and substance to the Bankruptcy Code's fraudulent transfer provisions" and comparing 11 U.S.C. § 548(a)(1)(a) with N.C. Gen. Stat. § 39-23.4, 2013 WL 486782, at *12)).

In Thimbler, Inc. v. Unique Solutions Design, Ltd., No. 5:12-cv-695, 2013 WL 485514, (E.D.N.C. September 11, 2013), the court dismissed a claim for actual fraudulent transfers on the ground that the complaint failed to meet the requirements of Rule 9(b). The court dismissed the claim because the plaintiff "failed to inject any measure of substantiation into its allegations regarding the factual circumstances surrounding the fraud." Id. at *7. The court also concluded that the plaintiff failed to properly plead intent because there was nothing more than a recitation of the statutory element that the transfer was made "with the intent to hinder, delay, or defraud." Id. at *8.

Here, the Court finds that the actual fraudulent transfer claim in the Amended Complaint is no different from the one dismissed in <u>Thimbler</u>. The Amended Complaint simply states that transfers were made to the Individual Defendants with the intent to hinder, delay, or defraud CNG. Doc. 15 at ¶ 114. It provides no facts to support that allegation and simply tracks the language from the UFTA. Therefore, the actual fraudulent transfer claim should be dismissed.

The only attempt by CNG to allege any facts to support a fraudulent transfer claim is its reference to Nakos Inc.'s 2016 tax returns. Doc. 15 at ¶ 28. CNG alleges that the 2016 tax returns show that Nakos Inc. made $41,105 in distributions to Chris and Lambros Nakos at a time that Nakos was operating at a loss. <u>Id.</u> However, a review of the 2016 tax return belies this claim.[3] While the tax return does indicate a loss of $4,735 for the year, that loss included a deduction for depreciation of $33,696. <u>See</u> Nakos Inc. 2016 Tax Return, attached as Exhibit A to the Declaration of Christos Nakos, Doc. 21-1. Excluding depreciation- which is merely a matter of accounting and does not impact cash flow- Nakos Inc. had positive income for 2016. The tax return also shows positive income for the prior two years. <u>Id.</u> at p. 32. In addition, the tax return shows that no distribution was made to Lambros Nakos. <u>Id.</u> at p. 7. Thus, the allegation that a distribution was made to Lambros Nakos is demonstrably false. And there is nothing improper with Chris Nakos receiving a distribution of $41,105 in 2016 when, excluding depreciation, the company had positive operating income for the year. Indeed, the Bailment Agreement was not executed until November 2016. Any distribution made prior to that date cannot be said to have been made with actual intent to defraud CNG. In sum, CNG fails to identify any transfer allegedly made to Lambros

---

[3] When considering a motion to dismiss under Rule 12(b)(6), a court can consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss as long as they are "integral to the complaint" and "authentic." <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 166 (4th Cir. 2016).

9

Nakos and fails to allege any facts to support a claim that the transfer made to Chris Nakos was made with actual intent to defraud. Instead, CNG's claim for actual fraudulent transfers is based only upon its conclusory recital of the elements of the cause of action and should be dismissed.

### 2. Constructive Fraudulent Transfer Claim

"Constructively fraudulent transfers, in contrast to those based on actual fraud, focus on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions." Callaway v. Cimarron Homeowners Ass'n, Inc. (In re Roszkowski), 494 B.R. 671, 678 (Bankr.E.D.N.C. 2013) (citation and internal quotation marks omitted). To plead such a claim under N.C. Gen.Stat. § 39–23.4(a)(2), CNG must allege facts showing that Nakos engaged in a business transaction for which its remaining assets were insufficient in relation to the transaction or that Nakos knew the debt incurred was beyond its ability to pay. Thimbler, 2013 WL 485514, at *8 (citing Oliver v. Cooper (In re Bateman), No. 11–00397–8–RDD, 2012 WL 1110080, at *3 (Bankr.E.D.N.C. Apr. 2, 2012)). To plead a claim for constructive fraudulent transfer under N.C. Gen.Stat. § 39–23.5, CNG must allege facts showing that Nakos was insolvent at the time of the transfer or that Nakos became insolvent as a result of the transfer. Id. (citing Miller v. First Bank, 696 S.E.2d 824, 827 (N.C. App. 2010)).

Although a constructively fraudulent transfer claim need not comply with the particularity requirements of Rule 9(b), it must still allege a plausible claim under the pleading standard set forth in Twobly and Iqbal. In Thimbler, the court dismissed a constructively fraudulent transfer claim because the complaint failed to allege facts sufficient to show that the defendant was insolvent or rendered insolvent at the time of the transfers at issue. Id. at *26-27. The court noted that the plaintiff's "constructive fraudulent transfer claims consist[ed] of a mere recitation of the

statutory elements as conclusory allegations, devoid of any facts or circumstances that would give rise to a plausible claim." Id. at *28; see also Hongda, 2016 WL 4703725 at *5-16.

Here, the Amended Complaint again fails to plead facts to support any of the conclusory "upon information and belief" allegations. The allegations against Defendants consist of nothing more than threadbare recitals of the elements of the cause of action. Further, as discussed above, CNG's reliance on Nakos Inc.'s 2016 tax returns is misplaced and does not show insolvency. Doc. 21-1. The Court finds that the claim for constructive fraudulent transfer against Defendants fails to state a claim and should be dismissed.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's fraudulent transfer claims against all Defendants be granted.

### F. **Civil Conspiracy to Commit Conversion and Fraud Claim**

In North Carolina, "[t]here is no independent cause of action for civil conspiracy." Toomer v. Garrett, 574 S.E.2d 76, 92 (N.C. App. 2002). However, if the plaintiff can establish the existence of a civil conspiracy, all of the conspirators will be jointly and severally liable for the act of any other conspirator undertaken in furtherance of the conspiracy. Spirax Sarco, Inc. v. SSI Eng'g, Inc., No. 5:14-CV-519-F, 2015 WL 4723609, at *7 (E.D.N.C. Aug. 10, 2015) (quoting Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C., 226 F.Supp.2d 785, 791 (W.D.N.C. 2002)). The plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Piraino Bros., LLC v. Atlantic Fin. Grp., Inc., 712 S.E.2d 328, 333 (N.C. App. 2011).

However, the doctrine of intracorporate immunity, which is well established in North Carolina, generally prohibits bringing a conspiracy claim against a corporation and its agents

because "claiming that a corporation has conspired with its agents, officers, or employees ... is 'tantamount to accusing a corporation of conspiring with itself.' " <u>Kingsdown, Inc. v. Hinshaw</u>, No. 14 CVS 1701, 2015 WL 1441826 (N.C. Super. Ct. Mar. 25, 2015) (quoting <u>State ex rel. Cooper v. Ridgeway Brands Mfg., LLC</u>, 646 S.E.2d 790, 799 (N.C. App. 2007)).

There is a narrow exception to this prohibition that applies in instances where the alleged conspirator "has an 'independent personal stake in achieving the corporation's illegal objective.'" <u>Kingsdown</u>, 2015 WL 1441826, at *13 (quoting <u>Buschi v. Jirven</u>, 775 F.2d 1240, 1252 (4th Cir. 1985)). This independent personal stake must be something more than a financial stake in the corporation involved in the conspiracy. <u>See</u> <u>Culver v. JBC Legal Group, P.C.</u>, No. 5:04-CV-389-FL, 2005 WL 5621875, at *7 (E.D.N.C. June 28, 2005); <u>Garlock v. Hilliard</u>, No. 00-CVS-1018, 2000 WL 33914616, at *5-6 (N.C. Super. Ct. Aug. 22, 2000).

CNG argues that their civil conspiracy claim falls within the exception to intracorporate immunity because the Individual Defendants were "acting in their individual capacities and in furtherance of their individual pecuniary interests" and that they converted "CNG's Inventory and the proceeds therefrom to their own use." Doc. 15 at ¶122-23.

The Court disagrees. CNG fails to support their civil conspiracy claim with any specific factual allegations. The conspiracy alleged by CNG merely consists of actions taken by the Individual Defendants in their capacity as officers or shareholders of Nakos. They do not allege any personal stake of the Individual Defendants other than their financial stake in the corporation. That is not sufficient to invoke the exception to intracorporate immunity. Consequently, the civil conspiracy claim fails and should be dismissed.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's civil conspiracy claims against all Defendants be <u>granted</u>.

## G. Piercing the Corporate Veil Claim

"The doctrine of piercing the corporate veil is not a theory of liability." <u>Green v. Freeman</u>, 749 S.E.2d 262, 271 (N.C. 2013). "Rather, it provides an avenue to pursue legal claims against corporate officers and directors who would otherwise be shielded by the corporate form." <u>Id.</u> Nevertheless, Defendants argue that CNG's claim should be dismissed because it relies on nothing more than conclusory, threadbare allegations that do not satisfy the <u>Iqbal</u> pleading requirements.

As a general rule, "a corporation is an entity, separate and distinct from its officers and stockholders, and ... its debts are not the individual indebtedness of its stockholders." <u>Landress v. Tier One Solar LLC</u>, 243 F.Supp.3d 633, 643 (M.D.N.C. 2017)(quoting <u>DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.</u>, 540 F.2d 681, 683 (4th Cir. 1976)). However, under the equitable doctrine of piercing the corporate veil, in extraordinary circumstances courts will disregard the corporate form, "exposing those behind the corporation to liability." <u>Id.</u> (quoting <u>Keffer v. H.K. Porter Co.</u>, 872 F.2d 60, 64 (4th Cir. 1989)). "The standard for piercing the corporate veil is high, but its purpose is to 'achieve an equitable result' by 'focus[ing] on reality and not form, on how the corporation operated and the [defendants'] relationship to that operation.'" <u>Flame S.A. v. Freight Bulk Pte. Ltd.</u>, 807 F.3d 572, 587 (4th Cir. 2015) (first alteration in original)(quoting <u>Vitol, S.A. v. Primerose Shipping Co.</u>, 708 F.3d 527, 544 (4th Cir. 2013)).

CNG has alleged that Nakos is insolvent (Doc. 15 at ¶¶ 24, 27, 113, 116) and inadequately capitalized (<u>Id.</u> at ¶¶ 24, 131) and that the primary shareholders—Chris and Lambros Nakos—operated Nakos as alter egos or mere instrumentalities of themselves (<u>Id.</u> at ¶¶ 129, 133), collectively owned 100% of Nakos (<u>Id.</u> at ¶¶ 25-26), dominated and controlled Nakos (<u>Id.</u> at ¶ 130), and diverted funds and assets from Nakos in an attempt to defraud its creditors (<u>Id.</u> at ¶ 132). Five claims against Nakos are not the subject of the instant Motion to Dismiss. They are breach

of contract, breach of bailment agreement, conversion, unfair and deceptive trade practices and unjust enrichment.  The Court finds that the facts alleged in the Amended Complaint, taken as true and viewed in the light most favorable to Plaintiff, are interwoven with the corporate claims that are not the subject of this instant Motion. Consequently, at this early stage of the case, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u> with regard to the piercing the corporate veil claim.

### H. <u>Unfair and Deceptive Trade Practices Act (UDTPA) Claim against Individual Defendants</u>

To state a claim for unfair and deceptive trade practices, CNG must allege three elements: "(1) the defendant committed an unfair or deceptive act or practice, (2) that was in or affecting commerce and (3) proximately caused injury." <u>BioSignia, Inc. v. Life Line Screening of Am., Ltd.</u>, No. 1:12CV1129, 2014 WL 2968139, at *6 (M.D.N.C. July 1, 2014) (citing <u>Dalton v. Camp</u>, 548 S.E. 2d 704, 711 (N.C. 2011)). "A mere breach of contract claim is not unfair or deceptive absent substantial aggravating circumstances." <u>Ellis v. Louisiana-Pacific Corp.</u>, 699 F.3d 778, 787 (4th Cir. 2012) (applying North Carolina law) (internal quotations and ellipses omitted). "Therefore, regardless of how unscrupulous the conduct may appear, efforts to encourage contractual performance while planning to breach, a refusal to otherwise meet contractual obligations, or an intentional breach of contract are not aggravating circumstances." <u>Beam Constr. Co., Inc. v. Allied World Specialty Ins., Inc.</u>, No. 3:27-CV-0040-FDW-DSC, 2017 WL 5158712, at *4 (W.D.N.C. Nov. 7, 2017) (internal quotations and punctuation omitted) (citing <u>Bartolomeo v. S.B. Thomas, Inc.</u>, 889 F.2d 530, 535 (4th Cir. 1989), <u>Deltacom, Inc. v. Budget Telecom, Inc.</u>, No. 5:10-cv-38-FL, 2011 WL 2036676, at *4 (E.D.N.C. May 22, 2011), and <u>Mitchell v. Linville</u>, 557 S.E.2d 620, 623 (N.C. Ct. App. 2001)); <u>see also</u> <u>Ellis</u>, 699 F.3d at 787 (noting that even an intentional breach of contract "is not sufficiently unfair or deceptive to sustain [an unfair and deceptive trade

17

practices] claim.").  The type of conduct that North Carolina courts have determined constitutes a substantial aggravating factor "has involved forged documents, lies, and fraudulent inducements." BioSignia, 2014 WL 2968139, at *6.

CNG argues that the Individual Defendants'[4] unfair and deceptive conduct consists of inducing CNG to continue business relations with Nakos so the Defendants could unlawfully convert CNG's inventory and pay themselves from the proceeds realized therefrom for their own personal financial gain and to the detriment of the Plaintiff. Doc. 15 at ¶¶ 17-18, 83-84, 122. The Court finds that CNG fails to allege any specific actions taken by the Individual Defendants that would support the UDTPA claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's UDTPA claim against the Individual Defendants be granted.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' Motion to Dismiss, Doc. 20, be **GRANTED IN PART and DENIED IN PART** as follows:

1. Plaintiff's Claim for tortious interference with contract against Chris Nakos be dismissed.

2. Plaintiff's claims for conversion and aiding and abetting conversion and unfair and deceptive trade practices against Chris and Lambros Nakos be dismissed.

3. Plaintiff's claims for fraud, fraudulent transfer and civil conspiracy against Defendants be dismissed.

---

[4] Defendants are not seeking dismissal of the UDTPA claim against Nakos.

4. Plaintiff's claim for constructive trust against Defendants be dismissed without prejudice to Plaintiff's ability to pursue the equitable remedy of a constructive trust to the extent one or more remaining claims for relief may justify such a remedy.

5. Defendants' Motion to dismiss Plaintiff's claim for piercing the corporate veil be denied.

## V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad.

**SO RECOMMENDED**.

Signed: August 28, 2019

David S. Cayer
United States Magistrate Judge

19