UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00640-RJC-DSC

| | | |
|---|---|---|
| CENTRAL NATIONAL GOTTESMAN INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| NAKOS PAPER PRODUCTS, INC., CHRISTOS L. NAKOS, and LAMBROS C. NAKOS, | ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, (Doc. No. 20), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 24).

## I.    BACKGROUND

Plaintiff Central National Gottesman Inc. ("Plaintiff" or "CNG") and Defendant Nakos Paper Products, Inc. ("Nakos") began doing business together in February 2014.  Pursuant to agreements between the parties, CNG delivered paper inventory to Nakos, and Nakos processed CNG's inventory into finished product that was sold and delivered to Nakos' end-use customers.  Defendants Christos L. Nakos ("Chris Nakos") and Lambros C. Nakos ("Lambros Nakos" and together with Chris Nakos, the "Individual Defendants") are the sole shareholders and officers of Nakos.

In late 2014 and 2015, Nakos failed to pay CNG for inventory delivered by CNG to Nakos.  By the end of 2016, Nakos' past due balance had grown to

$238,657.62. As a result of and to rectify the past due amount, Nakos and CNG agreed that: (1) CNG would deliver CNG's inventory to Nakos pursuant to a Bailment Agreement dated November 7, 2016; (2) at all times, CNG was the owner of CNG's inventory delivered to Nakos; (3) Nakos would process CNG's inventory into finished product; (4) CNG would invoice the end-use customers for the finished product delivered by Nakos; (5) CNG would receive payment from the customer, and the funds would be applied first to CNG's cost of inventory; and (6) the remaining funds would be paid 70% to Nakos and 30% to CNG.

Beginning in early 2017, Nakos breached the agreements by converting CNG's inventory into finished product and directly invoicing the end-use customers without CNG's knowledge or consent. This breach continued through early 2018 when CNG conducted a review and inspection of its inventory on Nakos' premises and discovered that approximately $400,000 of its inventory was missing.

CNG filed its Complaint on November 28, 2018 and an Amended Complaint on March 11, 2019. The Amended Complaint asserts the following claims: (1) breach of contract as to Nakos; (2) breach of the Bailment Agreement as to Nakos; (3) conversion as to Nakos; (4) unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1 as to all Defendants; (5) unjust enrichment as to Nakos; (6) tortious interference with contract as to Chris Nakos; (7) conversion and aiding and abetting conversion as to the Individual Defendants; (8) fraud as to all Defendants; (9) constructive trust as to all Defendants; (10) fraudulent transfers as to all Defendants; (11) civil conspiracy to commit conversion and fraud as to all Defendants;

and (12) piercing the corporate veil as to all Defendants.

Defendants moved under Rule 12(b)(6) to dismiss CNG's claims for unfair or deceptive acts or practices as to the Individual Defendants, tortious interference with contract as to Chris Nakos, conversion and aiding and abetting conversion as to the Individual Defendants, fraud as to all Defendants, constructive trust as to all Defendants, fraudulent transfers as to all Defendants, civil conspiracy as to all Defendants, and piercing the corporate veil as to all Defendants. In the M&R, the Magistrate Judge recommended that the Court grant the motion as to all claims except the claim to pierce the corporate veil. CNG timely filed objections to the M&R.

## II.    STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." Fannie Mae v. Quicksilver LLC, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will

survive if it contains enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original). Additionally, when ruling on a defendant's motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III.   DISCUSSION

CNG specifically objects to the M&R's conclusions regarding CNG's claims for

tortious interference with contract as to Chris Nakos, fraud as to all Defendants, conversion as to the Individual Defendants, and unfair and deceptive trade practices as to the Individual Defendants.[1]

## A. Tortious Interference with Contract as to Chris Nakos

CNG alleges that Chris Nakos tortiously interfered with Nakos' agreements with CNG. The Magistrate Judge concluded that CNG fails to allege sufficient facts to support that Chris Nakos acted outside his capacity as a shareholder and officer of Nakos such that his actions were not protected by the qualified privilege. CNG objects to the Magistrate Judge's conclusion, contending that it is not required to negate in its pleading the qualified privilege defense and, even if CNG were so required, it alleges sufficient facts showing that Chris Nakos acted outside his capacity as a shareholder and officer.

Under North Carolina law, a claim for tortious interference with contract requires:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

---

[1] Although CNG states that it objects to the M&R to the extent that it recommends dismissal of any of CNG's claims, the Court must only conduct a de novo review of those portions of the M&R to which CNG specifically objects. United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007); Johnson v. EEOC Charlotte Dist. Office, No. 3:15-cv-148, 2016 U.S. Dist. LEXIS 12810, at *6 (W.D.N.C. Feb. 3, 2016) ("De novo review is also not required 'when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.'" (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))).

Krawiec v. Manly, 811 S.E.2d 542, 546 (N.C. 2018) (quoting United Lab., Inc. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988)). As to the fourth element, "[i]nterference is without justification if a defendant's motive is not reasonably related to the protection of a legitimate business interest." Sellers v. Morton, 661 S.E.2d 915, 921 (N.C. Ct. App. 2008) (quotation marks omitted). This element, however, "is potentially vitiated by the defendant's corporate position" because "[o]fficers, directors, shareholders, and other corporate fiduciaries have a qualified privilege to interfere with contractual relations between the corporation and a third party." Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992) (quotation marks omitted). "The acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation." Wilson v. McClenny, 136 S.E.2d 569, 578 (N.C. 1964). However, "the presumption that an officer's acts are in the corporation's interest and thus justified is overcome when the means or the officer's motives are improper." Embree, 411 S.E.2d at 924.

CNG first objects that it is not required to negate the qualified privilege defense in its pleading, relying on Embree in which the court stated that "it is unreasonable to require the plaintiff to negate in its pleadings facts that more properly support a defense." Id. at 925. The court offered this statement, however, as one of three grounds supporting the court's conclusion that "a plaintiff states the fourth element of the claim of tortious interference with contract when he alleges facts supporting the allegation that the individual defendants' actions were in their

6

personal interest." Id. at 924–25. Thus, when read in context of the court's discussion, it is clear that to sufficiently allege a defendant acted without justification, "the plaintiff must allege facts demonstrating that defendants' actions were not prompted by 'legitimate business purposes.'" Id. at 926; see also Pinewood Homes, Inc. v. Harris, 646 S.E.2d 826, 832 (N.C. Ct. App. 2007) ("A motion to dismiss a claim of tortious interference is properly granted where the complaint shows the interference was justified or privileged."). As long as plaintiff alleges facts to this effect, plaintiff sufficiently alleges that the defendant acted without justification, and dismissal based on the qualified privilege defense is inappropriate.

CNG further objects that it alleges sufficient facts showing that Chris Nakos acted outside his capacity as a shareholder and officer in inducing Nakos not to perform its agreements. CNG points to paragraphs 83, 115, 116, and 132 of the Amended Complaint. These paragraphs allege:

- "Chris Nakos, as officer and director of Nakos, and for his own pecuniary gain, directed and caused Nakos' conversion of CNG's Inventory, as more particularly described above." (Doc. No. 15, ¶ 83.)

- Upon information and belief, Nakos transferred assets to Chris Nakos and/or Lambros Nakos, and such transfers "were not made in good faith or in the ordinary course of Nakos' business or financial affairs." (Doc. No. 15, ¶ 115.)

- "Upon information and belief, Chris Nakos and/or Lambros Nakos had knowledge that such transfers were made without Nakos receiving reasonably equivalent value in exchange and at a time when Nakos was insolvent and/or with the intent to hinder, delay, or defraud Nakos' creditors." (Doc. No. 15, ¶ 116.)

- "Upon information and belief, Chris Nakos and/or Lambros Nakos have diverted funds and assets from Nakos in an effort to commit fraud and/or avoid paying Nakos' creditors, such as CNG." (Doc. No. 15, ¶ 132.)

To the extent these allegations relate to CNG's tortious interference claim, they are conclusory and fail to allege sufficient facts showing that Chris Nakos' actions in inducing Nakos not to perform its agreements were in Chris Nakos' personal interest or otherwise not prompted by legitimate business purposes. Therefore, the Magistrate Judge correctly concluded that CNG's claim for tortious interference with contract should be dismissed.

### B. Fraud as to All Defendants

Under North Carolina law, a fraud claim requires "(1) a false representation or concealment of a material fact (2) that is reasonably calculated to deceive (3) made with intent to deceive (4) which does in fact deceive and (5) results in damage to the injured party." Charlotte Motor Speedway, LLC v. Cty. of Cabarrus, 748 S.E.2d 171, 178 (N.C. Ct. App. 2013). The "does in fact deceive" element means that plaintiff must show "reliance on the misrepresentation to the [claimant]'s detriment[.]" In re Rutledge, 510 B.R. 491, 505 (Bankr. M.D.N.C. 2014); see also Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005) ("In North Carolina, a fraud claim is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity."). Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). The Fourth Circuit has held that "the circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

8

McCauley v. Home Loan Inv. Bank, 710 F.3d 551, 559 (4th Cir. 2013) (quotation marks omitted).

CNG brings a fraud claim against all Defendants based on statements made by Chris Nakos in two emails to CNG dated February 16, 2018. The Magistrate Judge concluded that the fraud claim should be dismissed for two reasons: CNG fails to allege that the emails contained false information, and CNG fails to allege what action, if any, it took in reliance on the emails. CNG objects that the Amended Complaint sufficiently alleges that the emails contained false information and that CNG took action in reliance thereon. The Court disagrees.

The first email on which CNG bases its fraud claim is from Chris Nakos to Craig O'Brien, a credit manager at CNG, which stated:

> I don't want you to worry. I picked up some new business and will send the PO's to Connie for reference. You will absolutely get your cut guaranteed. Payments will start coming in in about a week and I will let you know when they do and against which order and ACH over the funds to you…Bottom Line is you will get your share of the dollars which is the most important.

(Doc. No. 15, ¶ 20 (omission in original).) O'Brien responded to this email directing Chris Nakos to wire to CNG full payment for CNG's inventory that was removed from Nakos' site. Chris Nakos' email in response to O'Brien's email is the second and last email on which CNG bases its fraud claim, which stated: "No problem,, [sic] Happy to do so. That is always my top priority. I will let you know when the payments arrive (which I was going to do anyway) and you can calculate the cost as usual…Just have some faith and let me work the process. I am with you guys 100%." (Doc. No. 15, ¶ 22 (omission in original).)

9

CNG simply fails to allege how the statements in Chris Nakos' emails were false representations of material fact, and the alleged falsity of the statements is not apparent from the statements themselves. Cf. McCauley, 710 F.3d at 557 (asserting a fraud claim based on the misrepresentation that the market value of plaintiff's property was $51,000 or more when it was in fact $35,700). In addition, even assuming that CNG sufficiently alleges that the emails falsely represented material facts, CNG fails to allege that it detrimentally relied on the emails' representations. In its objections to the M&R, CNG states that the basis of its fraud claim is that Chris Nakos' misrepresentations induced CNG to continue its relationship with Defendants. The Amended Complaint, however, is devoid of any allegation that after receiving Chris Nakos' emails, CNG—in reliance on the statements therein—continued to send inventory to Nakos or otherwise took any action. Therefore, the Magistrate Judge correctly concluded that CNG's claim for fraud as to all Defendants should be dismissed.

C.     Conversion and Aiding and Abetting Conversion as to the Individual Defendants

The Magistrate Judge concluded that CNG fails to allege that the Individual Defendants converted CNG's inventory and North Carolina has not recognized a claim for aiding and abetting conversion. CNG objects that it sufficiently alleges conversion by the Individual Defendants.

"Conversion is the unauthorized assumption and exercise of the right of ownership over the goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." White v. Consol. Planning,

Inc., 603 S.E.2d 147, 165 (N.C. Ct. App. 2004) (quotation marks omitted).  "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant."  Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012).

CNG points to paragraphs 83 through 86 in support of its objection that it sufficiently alleges conversion by the Individual Defendants.  These paragraphs state:

- "Chris Nakos, as officer and director of Nakos, and for his own pecuniary gain, directed and caused Nakos' conversion of CNG's Inventory, as more particularly described above."  (Doc. No. 15, ¶ 83.)

- "Lambros Nakos, as shareholder of Nakos, and for his own pecuniary gain, directed and caused Nakos' conversion of CNG's Inventory, as more particularly described above."  (Doc. No. 15, ¶ 84.)

- "As a result, Chris Nakos, in his individual capacity, converted CNG's Inventory, and aided and abetted Nakos' conversion of CNG's Inventory."  (Doc. No. 15, ¶ 85.)

- "As a result, Lambros Nakos, in his individual capacity, converted CNG's Inventory, and aided and abetted Nakos' conversion of CNG's Inventory."  (Doc. No. 15, ¶ 86.)

These conclusory allegations are insufficient to state a claim for conversion as to the Individual Defendants.  Therefore, the Magistrate Judge correctly concluded that CNG's claim for conversion and aiding and abetting conversion as to the Individual Defendants should be dismissed.

D.     Unfair or Deceptive Acts or Practices as to the Individual Defendants

The Magistrate Judge concluded that CNG fails to allege any specific actions taken by the Individual Defendants to support a claim for unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.  CNG objects that it sufficiently

alleges specific actions taken by the Individual Defendants.

"[I]n order to establish a violation of [section 75-1.1], a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 399 (N.C. 2007). "The determination as to whether an act is unfair or deceptive is a question of law for the court." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Hills Mach. Co., LLC v. Pea Creek Mine, LLC, 828 S.E.2d 709, 716 (N.C. Ct. App. 2019) (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)). "[A] practice is deceptive if it has the capacity or tendency to deceive." Walker, 653 S.E.2d at 399 (alteration in original) (quoting Marshall, 276 S.E.2d at 403).

CNG contends that it sufficiently alleges specific actions taken by the Individual Defendants to support a claim for unfair or deceptive acts or practices, namely that the Individual Defendants (1) sent emails to CNG containing fraudulent statements, (2) induced Nakos to breach its agreements with CNG, (3) converted CNG's inventory, and (4) diverted funds and assets from Nakos to commit fraud and/or avoid paying Nakos' creditors.

As discussed with respect to CNG's fraud claim, CNG fails to allege that Chris Nakos' emails contained fraudulent statements. Moreover, CNG fails to sufficiently allege detrimental reliance on the emails, and "[w]here an unfair or deceptive practice

12

claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains." Hills Mach. Co., LLC, 828 S.E.2d at 717. CNG's allegations that the Individual Defendants induced Nakos to breach its agreements and diverted funds and assets from Nakos to commit fraud and/or avoid paying Nakos' creditors are conclusory—the Amended Complaint is simply devoid of any factual allegations to support these conclusory allegations. (Doc. No. 15, ¶¶ 76–80, 129–32.) And as discussed with respect to CNG's conversion claim, the Amended Complaint fails to allege that the Individual Defendants converted CNG's inventory. Thus, the Magistrate Judge correctly concluded that CNG fails to allege specific actions taken by the Individual Defendants to support a claim for unfair or deceptive acts or practices.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1.    The Magistrate Judge's M&R, (Doc. No. 24), is **ADOPTED**; and

2.    Defendants' Motion to Dismiss, (Doc. No. 20), is **GRANTED in part** and **DENIED in part**. The motion is granted as to CNG's claims for tortious interference with contract against Chris Nakos, conversion and aiding and abetting conversion against the Individual Defendants, unfair or deceptive acts or practices against the Individual Defendants, fraud against all Defendants, fraudulent transfers against all Defendants, and

13

civil conspiracy against all Defendants, and these claims are dismissed.
The motion is also granted as to CNG's claim for a constructive trust
against all Defendants, and this claim is dismissed without prejudice to
CNG pursuing the equitable remedy of a constructive trust to the extent
one or more remaining claims may justify such a remedy. The motion is
denied as to CNG's claim for piercing the corporate veil.

Signed: October 23, 2019

Robert J. Conrad, Jr.
United States District Judge