# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHRLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00640-DSC

| | |
|---|---|
| CENTRAL NATIONAL GOTTESMAN INC., | )<br>)<br>) |
| Plaintiff, | )<br>) **ORDER**<br>) |
| v. | )<br>) |
| NAKOS PAPER PRODUCTS INC. AND CHRISTOS L. NAKOS, | )<br>)<br>) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Plaintiff's Verified Motion for Entry of Default and Default Judgment against Defendant Nakos Paper Products, Inc. Defendant has not responded to this Motion and the time for filing a response has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c) and this Motion is ripe for the Court's determination.

For the reasons set forth therein, the Motion will be <u>granted</u>.

### I.    PROCEDURAL AND FACTUAL BACKGROUND

On November 28, 2018, Plaintiff brought this action alleging Defendants made false representations to induce it into continuing their business relationship. Plaintiff further alleges that Defendants diverted funds and assets from the inadequately capitalized corporate Defendant to avoid paying its creditors, including Plaintiff. In the Amended Complaint, Plaintiff asserted twelve

1

claims: (1) Breach of Contract; (2) Breach of Bailment Agreement; (3) Conversion; (4) Unfair and Deceptive Trade Practices; (5) Unjust Enrichment; (6) Tortious Interference with Contract; (7) Conversion and Aiding and Abetting Conversion; (8) Fraud; (9) Constructive Trust; (10) Fraudulent Transfers; (11) Civil Conspiracy to Commit Conversion and Fraud; and (12) Piercing the Corporate Veil. After Defendants' Motion for Partial Summary Judgment, doc. 50, was <u>granted in part</u> and <u>denied in part</u>, the claims for (1) Breach of Contract; (2) Breach of Bailment Agreement; (3) Conversion; (4) Unfair and Deceptive Trade Practices; and (5) Piercing the Corporate Veil remain against Defendant Nakos Paper Products Inc.

On January 26, 2021, Defendant's counsel filed a Motion to Withdraw. Doc. 51. The Motion was <u>granted</u>, and Defendant Nakos Paper Products, Inc. was <u>ordered</u> to retain new counsel. Doc. 52. <u>See</u> <u>Microsoft Corp. v. Computer Serv. & Repair, Inc.</u>, 312 F. Supp. 2d 779 (E.D.N.C. 2004) ("[A] corporation may not appear pro se."). Plaintiff then filed a Motion for Order to Show Cause, Doc. 53, citing Defendant's violation of the Court's Order to retain new counsel. Doc 60, at ¶ 4. On April 14, 2021, the Court entered an Order directing Defendant to show cause why default judgment should not be entered, Doc. 59. Defendant has not responded to the Court's Order or this Motion.

On June 21, 2021, Plaintiff filed its Motion for Default Judgment against Defendant Nakos Paper Products, Inc. seeking judgment on all remaining claims, recovery of its attorney's fees and costs, and treble damages pursuant to North Carolina's Unfair and Deceptive Trade Practices Act.

## II. DISCUSSION

Plaintiff seeks entry of default judgment against Defendant Nakos Paper Products, Inc. Entry of a Default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure, which states "[w]hen a party, against whom a judgment for affirmative relief is sought, has failed to plead

2

or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Upon entry of default, the defaulted party is deemed to have admitted all well-pled allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); see also FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages —is admitted if a responsive pleading is required and the allegation is not denied."). But the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). The court must determine whether the well pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 Fed.Appx. 257, 258 (4th Cir. 2006) ("'[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'").

Plaintiff is entitled to relief on all remaining claims, and Defendant is liable for damages. These damages include $581,626.36, representing the principal amount of damages sought for the previous debt plus missing inventory. North Carolina's unfair and deceptive trade practice law provides for treble damages, which in this case amounts to $1,744,879.08. See N.C. Gen. Stat. § 75–16.

### A. Plaintiff is entitled to treble damages because of Defendant's of violation of N.C. Gen. Stat. § 75-1.1(a) (UDTPA).

North Carolina's Unfair and Deceptive Trade Practice Act (UDTPA) prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. The Act was later amended to extend an award of treble damages to any person injured by the acts of another in violation of Chapter 75. N.C. Gen.

3

Stat. § 75-16. The original purpose of the statute was "to provide a civil legal means to maintain ethical standard of dealings between persons engaged in business or between [a] person engaged in business and the consuming public within this state, [and maintain] fair dealing between buyers and sellers at all level[s] of commerce." Bhatti v. Buckland, 328 N.C. 240, 400 S.E.2d 440 (1991) (holding the Act was originally enacted as a consumer protection statute providing a private cause of action for aggrieved consumers.) But it is clear that the statute now applies to all transactions in commerce unless otherwise excepted. Stoflo v. Kernodel, 118 N.C. App. 580, 455 S.E.2d 869 (1995).

This Court has held that a conversion claim may constitute a UDTPA violation when coupled with sufficiently aggravating factors. Global Hookah Distributors, Inc. v. Avior, Inc., 401 F.Supp.3d 653 (W.D.N.C. 2019). The aggravating factors necessary to sustain a UDTPA claim are: (1) defendant committed an unfair or deceptive act or practice, or an unfair method of competition; (2) the allegedly violative act was in or affecting commerce; and (3) the allegedly violative act proximately caused plaintiff's actual injury. Spartan Leasing v. Pollard, 101 N.C.App. 450, 400 S.E.2d 476, 482 (1991).

1. Defendant committed a deceptive act.

Either an unfair or deceptive act falls within the purview of the statute. The act need not be both. Rucker v. Huffman, 99 N.C.App. 137, 392 S.E.2d 419, 421 (1990)  But what actually constitutes an unfair or deceptive trade practice is "a somewhat nebulous concept" that depends on the particular circumstances of a case. Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir. 1996).

4

Typically, an act is classified as unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Bob Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 323 (N.C. Ct. App. 2006). An act is considered deceptive "if it has the capacity or tendency to deceive." Bob Timberlake, 626 S.E.2d 315 at 323. As a rule, misrepresentations are sufficient for an act to qualify as a deceptive trade practice. S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese, 284 F.3d 518, 522 (4th Cir. 2002); see also Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F.Supp.2d 664, 700 (M.D.N.C.2011) ("[a]ggravating factors include an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other.")

Here, Defendant's misrepresentation qualifies as a deceptive act. Throughout 2017, Defendant continuously converted Plaintiff's inventory. Plaintiff conducted a review and inspection in 2018 and discovered that almost $400,000 worth of inventory was missing. When confronted with this discrepancy, Defendant Christos Nakos assured Plaintiff, "I don't want you to worry…You will absolutely get your cut guaranteed. Payments will start coming in in about a week…Bottom Line is you will get your share…" After Plaintiff insisted on immediate reimbursement for all converted inventory, Defendant responded "[j]ust have some faith and let me work the process. I am with you guys 100%." This correspondence took place on February 16, 2018, but by May 16, 2018 Defendant still owed the previous debt and inventory remained unaccounted for. Defendant's failure to reimburse Plaintiff for the converted inventory and its misrepresentations that they would be promptly reimbursed amount to a deceptive act.

2. The alleged act was in or affecting commerce

An act is "in or affecting commerce" if the parties were "engaged in an activity involving an exchange of some type in which a participant could be characterized as a seller." Durling v. King,

5

146 N.C. App. 483, 554 S.E.2d 1, 4 (2001). The activity need only "surround" or "affect" a sale. It need not meet the stricter standard of inducing a sale. Id. The proper inquiry "is [merely] whether the defendants' allegedly deceptive acts affected commerce." Id.

In Colgate, the offensive acts centered around defendant's failure "to give the plaintiff notice of termination of the contract" and its refusal to "reconvey the assets." United Roasters Inc. v. Colgate-Palmolive Co., 485 F. Supp. 1041, 1046 (E.D.N.C. 1979). These activities "affected" or "surrounded" the sale when they caused a termination of all binding obligations under the contract. Id. at 1046. Few things "affect" a sale more than the cessation of all binding obligations flowing from the sales contract. Id.

Defendant's offensive conduct here directly affected commerce. Contrary to the parties' agreement, Defendant converted Plaintiff's inventory without its knowledge or consent, received direct payment from the end-use buyers, and failed to reimburse Plaintiff after this deception was discovered. Like in Colgate, the "affect" of these activities was an ultimate cessation of all legal obligations flowing from the bailment agreement. Thus, Defendant directly "affected" the sale of Plaintiff's inventory.

    3.   The deceptive act proximately caused actual injury to Plaintiff

Finally, plaintiff must prove that they suffered actual injury as a proximate result of defendant's conduct. Bob Timberlake Collection, Inc., 626 S.E.2d 315 at 323. Under North Carolina law, misrepresentations qualify as a sufficiently deceptive trade practice. S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese, 284 F.3d 518, 522 (4th Cir. 2002). But Plaintiff must show that reliance on the misrepresentation "proximately caused actual injury to them." Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621 (W.D.N.C. 2006); see also Winston Realty Co. v. G.H.G.,

6

Inc., 70 N.C. App. 374, 320 S.E.2d 286, 290 (1984) (holding reliance on a misrepresentation by defendant need not be reasonable to satisfy UDTPA). In Blis Day Spa, the alleged misrepresentation of certain policy provisions was not the proximate cause of plaintiff's injuries where they never suffered damages as a result of the false statements. Blis Day Spa, LLC., 427 F. Supp. 2d 621 at 635. The plaintiff failed to put forth evidence showing defendant ever delayed payments due to the misrepresentation of the policy provisions. Id. The lack of any damages associated with the misrepresentation broke the causal link necessary to establish proximate cause. Id.

Unlike in Blis Day Spa, Plaintiff has proven the misrepresentation resulted in $581,626.36 in damages. Defendant converted almost $400,000 worth of Plaintiff's inventory. When Plaintiff discovered the discrepancy, Defendant promised prompt reimbursement but failed to do so. This misrepresentation led to continued debt accumulation by Defendant, which was never repaid. Defendant's conversion and later misrepresentations were the direct cause of Plaintiff's damages.

The Court awards Plaintiff $1,744,879.08 in damages. Defendant is further ordered to pay Plaintiff's reasonable attorney's fees and costs. Such amounts will be determined by this Court following review of an affidavit submitted by Plaintiff's counsel.

**NOW THEREFORE IT IS ORDERED:**

1. "Plaintiff's Verified Motion for Entry of Default and Default Judgment," Doc. 60, is **GRANTED.**
2. Judgment is **ENTERED** in favor of Plaintiff Central National Gottesman Inc. and against Defendant Nakos Paper Products, Inc. in the amount of $1,744,879.08.

3. Plaintiff is awarded reasonable attorney's fees and costs incurred in obtaining this Order, such amounts to be determined by the Court following a review an of affidavit submitted by Plaintiff's counsel within seven calendar days of this Order.
4. The Clerk is directed to send copies of this Order to Plaintiff's counsel and Defendant Christos Nakos.

**SO ORDERED**.

Signed: August 11, 2021

David S. Cayer
United States Magistrate Judge